```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:Mar. 24, 2014
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------- X
AMANDA LEE,                          :
                                     :
                  Plaintiff,         :
                                     :
     - against -                     :          No. 12 Civ. 7374
                                     :          **OPINION & ORDER**
JOEL B. CHARLES, and                 :
JOHN W. WANY,                        :
                                     :
                  Defendants.        :
--------------------------------- X

Appearances

For Plaintiff Amanda Lee
     John P. Bostany

For Defendants Joel B. Charles and John W. Wany
     JAMES G. BILELLO & ASSOCIATES
     By:  Christopher Miller


**JOHN F. KEENAN, United States District Judge:**

     Before the Court is Plaintiff's motion for a new trial.

Although Plaintiff prevailed at trial, she now contends that

this Court's instructions to the jury were plainly erroneous and

prejudicial, such that the jury's award of damages was

diminished.  For the reasons that follow, the motion is denied.

                    **I.   Background**

     The facts of this personal injury case are set forth in

several of this Court's prior opinions, particularly Lee v.

Charles, --- F. Supp. 2d ----, 2013 WL 6415722 (S.D.N.Y. 2013).

Briefly stated, at about 11:20 P.M. on September 18, 2012,

Plaintiff Amanda Lee was walking westbound on York Avenue in the

north crosswalk at East 68th Street in Manhattan when she was struck by a car owned by Defendant John W. Wany and driven by Defendant Joel B. Charles.

Prior to trial, the Court granted summary judgment for Plaintiff as to liability.  A jury trial was scheduled to determine the proper amount of damages. See id. at *2-4.  Before the trial began, the parties each submitted their requested jury charges.  Plaintiff submitted only three:  New York Pattern Jury Instruction ("PJI") 2:280 (Injury and Pain and Suffering); PJI 2:281 (Life Expectancy Tables); and PJI 2:284 (Shock, Emotional Distress and Physical Consequences Thereof). (ECF No. 91.)  The Court incorporated each of these requested instructions into the jury charge. (Miller Aff. of Dec. 27, 2013 Ex. 1 at 3).

The damages trial was held November 13-18, 2013.  At trial, Plaintiff presented evidence that she sustained a "serious injury" as defined in New York Insurance Law § 5102(d), namely, a tibia fracture.  The Court now recounts the trial testimony only as is relevant to the instant motion.

Plaintiff first called Dr. Jerry Lubliner, an orthopedic surgeon, to testify as an expert witness.  Dr. Lubliner testified on direct examination that when he examined Plaintiff a year after the accident, her fracture had healed and her knee showed a full range of motion. (Trial Tr. at 40-41.)  Dr. Lubliner stated that Plaintiff complained of recurrent pain,

although he noted:  "Pain is what we call subjective.  You cannot take a picture of it.  You cannot measure it.  The patient tells you about it." (Id. at 41.)  On cross-examination, Dr. Lubliner added that he found no atrophy and no swelling in Plaintiff's knee, thigh, or calf. (Id. at 51, 56-58.)  Nor did he find any torn ligaments, nor did he observe any limp or abnormality in Plaintiff's gait. (Id. at 59-61.)  Dr. Lubliner did testify, however, that he believed Plaintiff would be permanently limited in her ability to ski, hike, run, and swim. (Id. at 63.)

Plaintiff next called Dr. Joseph Persico, a physical therapist who had worked with her and who was also permitted to testify an expert in the field of physical therapy.  Dr. Persico testified at some length regarding his treatment of Plaintiff from October 2012 to February 2013.  He recounted that over the course of her therapy, she regained the ability to put weight on the injured knee. (Id. at 129-30.)  He stated that Plaintiff was not recommended to be discharged from physical therapy in February (id. at 104, 106, 148), but that she never returned for more treatment after her February 4 visit. (Id. at 134-35.)  Dr. Persico also read a May 1, 2013 discharge note from Plaintiff's physical therapy records, which stated, in part:  "Patient has met both long- and short-term goals and has been discharged." (Id. at 118.)

Plaintiff then took the stand to testify regarding her damages. When asked on direct examination about her hobbies, Plaintiff answered that she had been an "avid long-distance runner," although she had run only one race, a half-marathon in Iceland. (Id. at 159.) She also recounted her international travel. (Id.) As for activities, Plaintiff testified that she was interested in caving, but that she had found it "really difficult to get into that hobby" because she had not found other people with that interest. (Id.) She further testified that she had "been trying to get into wall climbing and rock climbing." (Id.) She also noted her interest in swimming, skiing, and hiking. (Id. at 175-76.)

On cross-examination, Plaintiff testified that she had not taken any painkillers since the spring of 2013. (Id. at 207-09.) She discussed her family vacation to Disneyworld in June 2013, during which she travelled via airplane, walked around the parks, and rode the attractions. (Id. at 208-11.) She also testified that no doctor had advised her not to run or ski, and that she had gone swimming twice since her accident. (Id. at 211-12.) On redirect examination, Plaintiff stated that she joined a gym after the accident, but only visited the gym between three and five times in 2013. (Id. at 222.)

Plaintiff rested at the conclusion of her testimony and the Court made the finding that she had been seriously injured under

the Insurance Law.  For reasons that are not relevant to the
instant motion, Defendants did not call any witnesses. (Id. at
150-55, 239-41.)

The charge conference was held on November 18, 2014.
Neither side got exactly the charge it wanted.  Defense counsel
objected to the inclusion of PJI 2:284 (Shock, Emotional
Distress and Physical Consequences Thereof) on the grounds that
there was no allegation or evidence that Plaintiff suffered
psychological injuries or emotional trauma. (Id. at 236-37.)
The Court overruled counsel's objection and included the
substance of PJI 2:284 in the charge. (Id. at 237.)  The Court
also denied a number of Defendants' requests to charge. (Id. at
238-39.)

Although Plaintiff's counsel had already submitted his
requests to charge (which had all been incorporated into the
jury charge), he argued at the charge conference for the
inclusion of a supplemental charge, PJI 2:280.1, which discusses
loss of enjoyment of life.  The Court denied the request, noting
that the charge already mentioned that Plaintiff could recover
for the loss of enjoyment of her life, but granted Plaintiff the
opportunity to be heard again after reading the charge. (Id. at
237-38.)  Plaintiff later renewed his request, which was again
denied. (Id. at 274-75.)

In his summation, defense counsel argued to the jury that
although Plaintiff had certainly been injured in the accident,
she should not receive future damages.  To support this
argument, he reminded the jury of certain testimony:  that
Plaintiff had joined a gym for the first time in April 2013 (Id.
at 249); that her treating doctor had never written her a
prescription for pain medication, and that it had been many
months since she had taken over-the-counter medication (id. at
250); that she had recently taken a vacation, which involved
walking around and travelling by plane, without special
accommodations (id. at 251); that no doctor had told Plaintiff
she could not run or ski (id. at 252); that she had been
discharged from physical therapy having apparently met her
short- and long-term goals (id. at 253-54); and that there was
no objective evidence of continued injury, atrophy, swelling,
ligament damages, or a limp (id. at 256).  Counsel concluded his
summation by recommending that the jury award Plaintiff $15,000
to $20,000 for her past damages, but no money for future damages
because "she has gone back to enjoying her life." (Id. at 260.)

Plaintiff's counsel began his summation with a criticism of
defense counsel:

> I respectfully submit that Mr. Miller and the defense
> team does not want you to use your common sense. . . .
> [W]e hear Mr. Miller and again here in summations I
> counted how many times he mentioned that Amanda went
> on the rides [at Disneyworld].    Eight times.
> Meanwhile, the jury heard that she didn't go on the

rides.   There is a problem.   How does Mr. Miller say
with a straight face that he wants the jury to listen
to the facts and use their common sense when he sits
here and says, You heard Amanda went on the rides.   He
knows the jury didn't hear that.   He knows the jury
heard that she watched a movie.   Yet he is saying it
over and over because he doesn't want the jury to
realize this is a woman whose life has changed because
of his client's conduct.

(Id. at 261–62.)   Notwithstanding this argument, the jury had

indeed heard repeatedly from Plaintiff that she had gone on

several rides in Disney. (Id. at 184–85; 210 (Q. "You told us

you went on the rides; correct?"   A. "Yes.").)

From there, counsel endeavored to refute the defense's

points.   But in a summation that comprises over ten pages of the

record, Plaintiff's counsel alluded to his client's loss of

ability to enjoy life only sporadically. (Id. at 262, 270–71.)

He did briefly recount her previous, active lifestyle at first.

(Id. at 262.)   But the overwhelming majority of his argument as

to the testimony had to do with Plaintiff's past pain and

suffering, presumably to support his recommendation to the jury

that she be awarded $150,000 for past damages alone. (Id. at

263–69.)

When counsel reached his discussion of the jury verdict

form, he returned to the topic of Plaintiff's future lost

enjoyment of life:

[T]he jury is also going to be asked to award money
based upon Amanda Lee's loss of enjoyment of
life . . .   What is it worth to not be able to run and
hike and go on these trips that she loved going on

> before the accident?   What is that worth per a year?
> $30,000 a year?   $40,000 a year?   $20,000 a year?   The
> jury is going to have to put a figure on that.

(Id. at 270.)   He concluded by reminding the jury once again of

Plaintiff's testimony that her knee prevented her from running

and hiking. (Id. at 271.)

    After a recess, the Court instructed the jury on the

applicable law.   The Court read its standard charge regarding

how the jury might assess the credibility of witnesses,

including interested witnesses such as Plaintiff. (Miller Aff.

of Dec. 27, 2013 Ex. 1 at 2.)   As to damages, the instructions

provided, in relevant part:

> With respect to any of the plaintiff's injuries
> or disabilities, plaintiff is entitled to recover a
> sum of money which will justly and fairly compensate
> her for any bodily injury, conscious pain and
> suffering, and loss of her ability to enjoy life to
> date caused by the defendants.   You must also include
> in your verdict damages for any mental suffering,
> emotional and psychological injury and any physical
> consequences resulting from the emotional distress
> caused by the wrongful act of the defendants.
>
> The plaintiff is also entitled to recover for
> future pain, suffering and disability and the loss of
> her ability to enjoy life. In this regard you should
> take into consideration the period of time that the
> injuries or disabilities are expected to continue. If
> you find that the injuries or disabilities are
> permanent, you should take into consideration the
> period of time that the plaintiff can be expected to
> live.

(Id. at 3) (emphasis added).

    Upon the conclusion of its deliberations, the jury returned

a verdict.   It awarded Plaintiff damages of $25,000 for her

pain, suffering, disability, disfigurement, and loss of enjoyment of life suffered to that date.  For her future damages — pain, suffering, disability, disfigurement, and loss of enjoyment of life — the jury chose to award Plaintiff no damages.

## II.  Discussion

"To justify a new trial, a jury instruction must be both erroneous and prejudicial." Millea v. Metro North R.R. Co., 658 F.3d 154, 163 (2d Cir. 2011) (citing Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 115 (2d Cir. 2000)).  The Court addresses error and prejudice in turn.

### A.   The Jury Instruction Was Not Erroneous

The Second Circuit has stated that "a trial court has discretion in the style and wording of jury instructions," and "is not obliged to use the exact words proposed by a party." Care Travel Co., Ltd. v. Pan Am. World Airways, Inc., 944 F.2d 983, 996 (2d Cir. 1991).  Accordingly, the charge will be deemed adequate if, taken as a whole, it "'is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it.'" E.g., Lore v. City of Syracuse, 670 F.3d 127, 156 (2d Cir. 2012) (quoting Schermerhorn v. Local 100, Transport Workers Union, 91 F.3d 316, 322 (2d Cir. 1996)).  On the other hand, the instruction is erroneous if it "misleads the jury as to the correct legal standard or where it fails to

adequately inform the jury of the law." E.g., Velez v. City of
N.Y., 730 F.3d 128, 134 (2d Cir. 2013) (citing Gordon, 232 F.3d
at 115).

In the instant case, Plaintiff's counsel contends that it
was plain error for the Court to deny his request to supplement
the jury charge with PJI 2:280.1.  The essence of that
instruction reads:  "Loss of enjoyment of life involves the loss
of the ability to participate in the activities which were part
of the person's life before the injury and to experience the
pleasures of life."  Counsel now repeats his argument that it
was "extremely unfair and prejudicial to Plaintiff for the jury
not to be advised that it was permitted to award Amanda Lee
money damages for her loss of enjoyment of life." (Pl. Br. at
4.)

There is just one problem with this contention:  the jury
was advised that it could award damages for loss of enjoyment of
life.  They were so instructed by this Court, and indeed
Plaintiff's enjoyment of life was a recurring theme in her
testimony.  The jury was nevertheless entitled to conclude that
Plaintiff should not receive future money damages (and only
modest past damages) on this theory.  They may have reached such
a conclusion on various grounds.  For example, perhaps the jury
declined to credit her testimony about her continued pain, in
light of her testimony that she had not taken any pain

medication in months.  Alternatively, perhaps they disagreed

with the argument that her life had been irrevocably altered, in

light of the testimony that she had recently gone on vacation

and had not been a regular swimmer or spelunker[1] before the

accident.  Whether they acted upon one of these conclusions or

some other, their verdict was plainly the product of their

assessment of the evidence, rather than a misstatement of the

law in the charge.  And to the extent counsel is arguing that

the jury simply did not understand the obvious meaning of the

word "enjoyment," that baseless position is belied by the fact

that the jury did not write a note seeking clarification, even

though they were told by the Court that they could do so — and

in fact had previously done so twice, to pose other questions to

the Court.

It is the rare case indeed where a plaintiff feels that the

jury charge describes the full spectrum of his adversary's

potential liability with optimal fulsomeness and fervor.  Here,

however, the jury was explicitly instructed that they could

award Plaintiff money damages to compensate for her professed

loss of enjoyment of life.  The jury chose to award Plaintiff a

modest sum for her past damages, and to award her no future

damages.  Plaintiff has utterly failed to show that these

choices demonstrate error in the jury charge.  Because the

---

[1] An explorer of caves, from the Latin <u>spelunca</u>.

charge adequately informed the jury of the applicable law, the Court concludes that the complained-of error does not exist. See Henderson v. Kibbe, 431 U.S. 145, 155 (1977) (distinguishing between actually erroneous instruction and party's claim of prejudice "based on the failure to give any explanation beyond the reading of the statutory language itself").

**B.   Even if the Instruction Was Erroneous, the Error Would Have Been Harmless**

Even where a jury instruction was erroneous, a new trial is not justified unless the instruction was also prejudicial. Millea, 658 F.3d at 163; see Velez, 730 F.3d at 134 (new trial required where error is not "harmless").  An error is harmless, or non-prejudicial, "if the court is convinced that the error did not influence the jury's verdict." Gordon, 232 F.3d at 116 (citing LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J., 173 F.3d 454, 462 (2d Cir. 1999)).  "'An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" E.g., Lore, 670 F.3d at 156 (quoting Henderson, 431 U.S. at 155).

Plaintiff contends that she was prejudiced by the Court's decision not to charge PJI 2:280.1, in particular because the jury awarded no future damages.  For the reasons discussed earlier, the Court has concluded that its charge to the jury was not erroneous.  Even if the charge was erroneous as Plaintiff urges, however, the Court is convinced that such an error would

12

have been harmless.  First, the purported error is the omission

of a comprehensive explanation of the phrase "loss of enjoyment

of life."  As the Second Circuit has repeatedly stated, however,

the danger of prejudice from such an omission is comparatively

low. See, e.g., Lore, 670 F.3d at 156.  Second, as previously

noted, future damages comprised a relatively minor portion of

Plaintiff's counsel's summation, which instead emphasized the

testimony about Plaintiff's injury in the months immediately

following the accident. (Trial Tr. at 263-69.)  In light of

counsel's focus in this regard, the Court sees no reason to

conclude that it was the charge which led to the jury's decision

not to award future damages.

Finally, it is worth considering the jury's award of past

damages as a useful point of comparison.  Because Plaintiff's

case for past damages focused overwhelmingly on her pain and

suffering during that period, rather than loss of enjoyment of

life, it follows that any error in the jury instructions

regarding loss of enjoyment would not seriously affect the past

damages award.  Defense counsel recommended that the jury award

Plaintiff $15,000 to $20,000 for her past damages. (Id. at 260.)

Plaintiff's counsel told the jury that the amount should instead

be $150,000. (Id. at 269.)  The jury returned a verdict of

$25,000, far closer to Defendant's recommendation than

Plaintiff's.  In so doing, the jury unequivocally rejected

13

Plaintiff's valuation of her past damages, even though there had been extensive testimony regarding the trauma of the accident, as well as her physical impediments and therapy.  By contrast, there was comparatively little testimony about future loss of enjoyment of life, which is by its very nature a more speculative and uncertain question than past damages.  Thus, the Court is left with no doubt that Plaintiff's proposed instruction on loss of enjoyment of life would not have changed the jury's verdict.  The real problem for Plaintiff was more fundamental:  the jury simply did not credit her damages assessments.  Accordingly, the purported error in the jury instruction, even if it did exist, was harmless.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for a new trial is denied.

**SO ORDERED.**

Dated:      New York, New York
            March 2 4 , 2014

                                         _____
                                              John F. Keenan
                                         United States District Judge

14